IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANTHONY E. SAUM                                                                       PLAINTIFF

VS.                                   CIVIL NO. 05-2175

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                DEFENDANT

## MEMORANDUM OPINION

Anthony Saum (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act.

## Background:

The application for DIB now before this court was filed on July 30, 2003, alleging an amended onset date of May 4, 2003, due to knee problems. (Tr. 70, 61-63). An administrative hearing was held on November 5, 2004. (Tr. 198-223). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on November 5, 2004, plaintiff was forty years old and possessed an eighth grade education. (Tr. 201). The record reveals that he had past relevant work ("PRW") as a poultry laborer, roofer, and helper/construction worker II. (Tr. 71, 220).

On January 7, 2005, the Administrative Law Judge ("ALJ"), issued a written opinion finding that plaintiff's left-sided blindness, reduced hearing, osteoarthritis, subchondral cysts and/or necrosis of the medial tibial plateau with joint effusion of the right knee, and post-operative condition for

AO72A
(Rev. 8/82)

shaving of the tibial plateau of the right knee were severe, but did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 24). After discrediting plaintiff's subjective allegations, the ALJ concluded that plaintiff maintained the residual functional capacity ("RFC") to perform light work, limited only by his inability to climb and occasional ability to balance. (Tr. 22-25). Further, the ALJ noted that plaintiff could not perform work that was precluded by his left-sided blindness and reduced hearing. With the assistance of a vocational expert ("VE"), the ALJ determined that plaintiff could still perform a significant number of jobs that exist in the national economy. (Tr. 25).

On November 30, 2005, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 10, 11).

**Discussion:**

The issue before this court is whether the Commissioner's decision is supported by substantial record evidence. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id*. *See also Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). "However, our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision.' Nevertheless, as long as there is substantial evidence in the record to support the

AO72A
(Rev. 8/82)

Commissioner's decision, we will not reverse it simply because substantial evidence exists in the record that would have supported a different outcome, *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995), or 'because we would have decided the case differently.'" *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001)(citations omitted).

A five-part analysis is utilized in social security disability cases. *See e.g., Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Applying this analysis, the ALJ must determine, sequentially, the following: 1) whether the claimant is employed; 2) whether the claimant has a severe impairment; 3) whether the impairment meets a listed impairment; 4) whether the impairment prevents the claimant from doing past work; and 5) whether the impairment prevents the claimant from doing any other work. *Id.*; *see also* 20 C.F.R. § 404.1520.

If the claimant fails at any step, the ALJ need not continue. "The claimant carries the burden of establishing that [he] is unable to perform [his] past relevant work, i.e., through step four, at which time the burden shifts to the Commissioner to establish that [he] maintains the residual functional capacity to perform a significant number of jobs within the national economy." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) (citing *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such

3

as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the medical evidence reveals that plaintiff experienced significant pain and limitation as a result of his knee impairment. The pertinent medical records are as follows. On May 2, 2003, a Magnetic Resonance Imaging (MRI) of plaintiff's right knee showed osteoarthritis and subchondral cysts and/or subchondral necrosis of the medial tibial plateau with a joint effusion. (Tr. 115). Plaintiff was referred to Dr. Robert May, an orthopaedic surgeon, and underwent arthroscopic surgery on May 29, 2003. (Tr. 110). Dr. May noted that plaintiff had massive delamination of the patellofemoral joint, medial compartment, and lateral compartment of the right knee. (Tr. 120). He also found loose bodies with chards of cartilage, which were trimmed and removed. Dr. May voiced his opinion that plaintiff would have a difficult time returning to his past work, and suggested that plaintiff talk to someone in the vocational rehabilitation program about the possibility of a job change. He also prescribed physical therapy to consist of therapeutic exercises, muscle re-education therapy, therapeutic modalities, and a home exercise program. (Tr. 108, 120).

On June 12, 2003, Dr. May noted that plaintiff was still in quite a bit of pain. (Tr. 120). Plaintiff reported that he was drawing disability and was seeking acceptance into the vocational rehabilitation program. Dr. May advised him that his weightbearing activity should be limited to

4

activities performed with the assistance of his crutches. He then prescribed Vioxx. (Tr. 120).

On June 26, 2003, Dr. May reported the claimant was doing poorly and was having a lot of pain and continued swelling. (Tr. 119). He stated that the arthroscopy had revealed a lot of delamination and erosion. (Tr. 119). As such, Dr. May did not think that plaintiff would be able to return to his usual job as a chicken catcher. Instead, he recommended that plaintiff seek the assistance of vocational rehabilitation services. (Tr. 119).

Progress notes dated August 6, 2003, reveal that plaintiff continued to experience difficulties with his right knee. (Tr. 119). On examination, Dr. May noted the presence of synovitis. Further, according to plaintiff, vocational rehabilitation services had declined to help him because he did not have a GED. Due to the "amount of arthritis" in plaintiff's knee, Dr. May recommended that plaintiff apply for disability and Medicaid. (Tr. 119).

On August 29, 2003, Dr. Steve Owens, a non-examining, consultative physician, completed an RFC assessment of plaintiff. (Tr. 122-130). After reviewing plaintiff's medical records, he concluded that plaintiff could lift ten pounds occasionally and less than ten pounds frequently, stand and walk at least two hours during an eight-hour workday, and sit about six hours during an eight-hour workday. (Tr. 123). No other limitations were noted. (Tr. 123-130).

On September 8, 2003, Dr. May reported the claimant was not getting any better and that, contrary to what was stated in the letter plaintiff had obtained from the Social Security Administration, Dr. May had never indicated that plaintiff's knee would improve. In fact, Dr. May reported that he expected plaintiff's knee to get worse. He was of the opinion that plaintiff would need to undergo a total knee arthroplasty within the next five years. As such, Dr. May encouraged plaintiff to appeal his disability claim. He also directed plaintiff to continue the home exercises,

AO72A
(Rev. 8/82)

avoid uneven ground, and attempt to lose weight. (Tr. 119).

On January 23, 2004, Dr. May wrote a letter indicating that plaintiff's arthroscopic findings were severe. (Tr. 132). He stated that plaintiff's condition rendered him unable to pivot, climb, kneel, bear weight, or lift without significant discomfort in the knee. (Tr. 132). Dr. May noted that lifting as little as twenty pounds occasionally was likely to cause plaintiff discomfort. Dr. May also reported that plaintiff could only stand for ten minutes at a time, for a total of one hour during an eight-hour workday. (Tr. 133). Further, he indicated that plaintiff could sit, but would need to extend his knees. Dr. May stated that crouching and crawling were only possible on rare occasions, as both would cause him a considerable amount of discomfort. Although Dr. May noted no environmental restrictions, he did opine that it would not be a good idea for plaintiff to work on slippery floors with heavy machinery nearby. (Tr. 133).

On March 15, 2004, plaintiff sought emergency treatment for knee pain. (Tr. 175). He reported that he had fallen on his right knee the previous evening. An x-ray of plaintiff's right knee revealed degenerative disease with a possible osteochondral body and a small ossific or calcific density in the posterior popliteal recess that could be a vascular calcification or a osteochondral entity. (Tr. 179). Following a diagnosis of degenerative joint disease, plaintiff was directed to discontinue use of his crutches and prescribed Anaprox and Darvocet. (Tr. 176). He was also referred to his primary care physician. (Tr. 176).

On May 6, 2004, Dr. Laurie Fisher, a one-time examining physician, ordered x-ray examinations of plaintiff's right knee, which showed arthritic changes with small joint effusion. (Tr. 166). Following an examination, the doctor noted "very marked crepitates" in the right knee with minimal crepitates in the left. (Tr. 165). She then completed a physical RFC assessment indicating

6

that plaintiff could lift and carry twenty-five pounds occasionally and fifteen pounds frequently, stand and walk for two hours total with interruptions every fifteen minutes, and sit indefinitely when his right knee is not flexed. (Tr. 168). Dr. Fisher also noted that plaintiff could never climb, stoop, crouch, kneel, or crawl, and that his balance was limited. (Tr. 168-169).

On September 21, 2004, plaintiff sought emergency treatment for knee pain. (Tr. 192). Records indicate that plaintiff's pain was primarily in the left knee. Following an examination, plaintiff was diagnosed with left knee degenerative joint disease and prescribed Naprosyn and Ultram. (Tr. 193).

In spite of this evidence, the ALJ concluded that plaintiff maintained the RFC to perform light work, limited only by his inability to climb and occasional ability to balance. (Tr. 22-25). Further, the ALJ noted that plaintiff could not perform work that was precluded by his left-sided blindness and reduced hearing. He did not, however, consider the opinions of Drs. Fisher or May indicating that plaintiff's knee impairment would result in some postural limitations. The ALJ also failed to consider the possibility that plaintiff's knee impairment might limit his ability to stand and walk. As such, we believe that the case should be remanded to the ALJ for further consideration of plaintiff's RFC.

We also note that the only RFC assessment contained in the record was prepared by a non-examining, consultative physician. (Tr. 122-130). *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925

7

(8th Cir. 1999). Accordingly, on remand, the ALJ is directed to address interrogatories to plaintiff's treating physicians, asking them to review plaintiff's medical records; to complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and, therefore, the denial of benefits to the plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 6th day of September 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)